1999 ME 164

**Pamela F. FRANCIS**

v.

**PLEASANT POINT PASSAMAQUODDY HOUSING AUTHORITY.**

Supreme Judicial Court of Maine.

Argued Nov. 3, 1999.

Decided Nov. 19, 1999.

Curtis Webber, Rebecca S.K. Webber (orally), Linnell, Choate & Webber, LLP, Auburn, for plaintiff.

Douglas B. Chapman, Fenton, Chapman, Fenton, Smith & Kane, P.A., Bar Harbor, Evan K. Butts (orally), Humble, TX, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Pamela F. Francis appeals from the summary judgment entered in the Superior Court (Washington County, *Kravchuk, C.J.*) dismissing her breach of contract action against the Pleasant Point Passamaquoddy Housing Authority. The Housing Authority cross-appeals a similar grant of a summary judgment dismissing its contract-based counterclaims against Francis. Francis contends that the Superior Court erred as a matter of law in finding that the Housing Authority's acts constituted an "internal tribal matter" pursuant to 30 M.R.S.A. § 6201 (1996), and, therefore, it lacked jurisdiction to hear the cause of action. The Housing Authority asserts that the court erred by refusing to hear its counterclaims, by refusing to allow

it to amend its counterclaims, and by refusing to allow attachment. Because we find that the court had jurisdiction, we vacate and remand for further proceedings.

## I. BACKGROUND

[¶ 2] On June 15, 1995, the Housing Authority hired Francis to serve as its Executive Director for a term of five years. At all times relevant to this dispute, the Housing Authority was a duly organized quasi-municipal entity formed and existing under the law of the State of Maine. *See* 30–A M.R.S.A. § 4995 (1996). Francis herself is a member of the Passamaquoddy Tribe. A little more than a year after her employment, the Housing Authority suspended Francis without pay; subsequently, it terminated her employment. Following her termination, Francis instituted the present action against the Housing Authority alleging that she was illegally fired. She sued pursuant to the state common law of contracts and 42 U.S.C. § 1983 (1994). The Housing Authority then counterclaimed based on Francis's alleged breaches of fiduciary

duties and her unjust enrichment at the expense of the Housing Authority.[1]

[¶ 3] After some initial discovery, the Housing Authority sought a summary judgment which the Superior Court denied. The court reasoned that the Housing Authority's firing of Francis was not an "internal tribal matter" and, therefore, cognizable by state courts. *See* 30 M.R.S.A. § 6206(1) (1996).[2] The court noted that the State can exercise jurisdiction over the Passamaquoddy Tribe "provided, however, that internal tribal matters, including membership in the respective tribe or nation, the right to reside within the respective Indian territories, tribal organization, tribal government, tribal elections and the use or disposition of settlement fund income shall not be subject to regulation by the State." *Id.* The court held that "internal tribal matters" centered on issues of tribal governance and that the present suit involved instead an alleged breach of contract.

[¶ 4] The Superior Court reversed itself three months later based on the legal reasoning in the First Circuit Court of Appeals decision in *Penobscot Nation v. Fellencer,* 164 F.3d 706 (1st Cir.), *cert.*

1. The Housing Authority also instituted several third party claims at the same time involving the same set of underlying facts as Francis's initial complaint. Those third party claims were later dismissed, and the Housing Authority has not appealed those dismissals.

2. Section 6206(1) was enacted as part of the Implementing Act of 1980. In full, the relevant subsection reads:

   **6206. Powers and duties of the Indian tribes within their respective Indian territories**

   **1. General powers.** Except as otherwise provided in this Act, the Passamaquoddy Tribe and the Penobscot Nation, within their respective Indian territories, shall have, exercise and enjoy all the rights, privileges, powers and immunities, including, but without limitation, the power to enact ordinances and collect taxes, and shall be subject to all the duties, obligations, liabilities and limitations of a municipality of and subject to the laws of the State, *provided, however, that internal tribal matters, including membership in the respective tribe or nation, the right to reside within the respec-*

   *tive Indian territories, tribal organization, tribal government, tribal elections and the use or disposition of settlement fund income shall not be subject to regulation by the State.* The Passamaquoddy Tribe and the Penobscot Nation shall designate such officers and officials as are necessary to implement and administer those laws of the State applicable to the respective Indian territories and the residents thereof. Any resident of the Passamaquoddy Indian territory or the Penobscot Indian territory who is not a member of the respective tribe or nation nonetheless shall be equally entitled to receive any municipal or governmental services provided by the respective tribe or nation or by the State, except those services which are provided exclusively to members of the respective tribe or nation pursuant to state or federal law, and shall be entitled to vote in national, state and county elections in the same manner as any tribal member residing within Indian territory.

   30 M.R.S.A. § 6206(1) (1996) (emphasis added).

*denied*, —— U.S. ——, 119 S.Ct. 2367, 144 L.Ed.2d 771 (1999). In its order, the Superior Court noted that Francis's position "involves an important human resource aspect of the [Passamaquoddy] Nation." Due to this finding of fact, the court ordered all counts of both the claim and counterclaim dismissed because it held that the Maine courts lacked jurisdiction in the matter. Both parties filed timely appeals to this order. .

## II. STANDARD OF REVIEW

[¶ 5] The Superior Court based its grant of a summary judgment on an absence of jurisdiction by the courts of the State of Maine to hear matters such as the present one. This decision turns solely on a question of law, therefore, this Court reviews the issue de novo on appeal. *See State v. O'Connor*, 681 A.2d 475, 476 (Me. 1996); *see also Passamaquoddy Water District v. City of Eastport*, 1998 ME 94, ¶ 5, 710 A.2d 897, 899 (stating that statutory interpretation is a question of law reviewed de novo). Typically, a statute will be construed to "accord [its] words ... 'their plain ordinary meaning' and, if that meaning is clear, [the Court] do[es] not 'look beyond the words, unless the result is illogical or absurd.'" *Id.* (quoting *Estate of Spear*, 1997 ME 15, ¶ 7, 689 A.2d 590, 591–592).

## III. THE JURISDICTION OF THE STATE OF MAINE OVER THE HOUSING AUTHORITY

[¶ 6] The section 6206(1) exception to state court jurisdiction arose out of the comprehensive settlement of the land claims asserted by the Penobscot, Passamaquoddy, and Maliseet Indians against the State of Maine. In the early 1970's, these three tribes brought suit in an attempt to lay claim to two-thirds of Maine's land mass as their ancestral homeland.

*See Joint Tribal Council of the Passamaquoddy Tribe v. Morton*, 528 F.2d 370 (1st Cir.1975). The tribes and the State negotiated a compromise with the assistance of the federal government which was memorialized by the Maine Indian Claims Settlement Act of 1980, 25 U.S.C. §§ 1721–1735 (1995) (Settlement Act), and the Maine Implementing Act, 30 M.R.S.A. §§ 6201–6214 (1996) (Implementing Act). As part of that compromise, the tribes allowed Maine to extend jurisdiction over "the [three tribes] to a greater degree than most states exercise over other Indian tribes." *Fellencer*, 164 F.3d at 708 (citation omitted).

[¶ 7] Maine, however, agreed to some restrictions on its jurisdiction; the agreement between the tribes and the State granted the tribes exclusive jurisdiction over "internal tribal matters." 30 M.R.S.A. § 6206(1). The federal Settlement Act expressly permitted and condoned this arrangement. *See* 25 U.S.C. § 1721(b)(3) (1995) (ratifying the Implementing Act's definition of the relationship between the State and the tribes); 25 U.S.C. § 1725(b)(1) (1995) (applying Maine jurisdiction to the Passamaquoddy Tribe except as otherwise provided in the Implementing Act). Nowhere, however, did either the Settlement or Implementing Act explicitly define "internal tribal matters" in their statutory text.

[¶ 8] Although the parties dispute the meaning of the phrase "internal tribal matters," we need not determine this term's definition to decide this case. By its own terms, this provision in section 6206(1) restricts Maine's jurisdiction only in reference to the Passamaquoddy Tribe itself. The Implementing Act defines the tribe as "the Passamaquoddy Indian Tribe as constituted on March 4, 1789, and all its predecessors and successors in interest ...." 30 M.R.S.A. § 6203(7) (1996).[3] The Hous-

---

3. The entire subsection says:
   **7. Passamaquoddy Tribe.** "Passamaquoddy Tribe" means the Passamaquoddy Indian Tribe as constituted on March 4,

1789, and all its predecessors and successors in interest, which, as of the date of passage of this Act, are represented by the Joint Tribal Council of the Passamaquoddy

ing Authority is not a branch of Passamaquoddy tribal government. *See Indian Township Passamaquoddy Reservation Hous. Auth. v. Governor of State*, 495 A.2d 1189, 1190–1191 (Me.1985) (describing the origin and purpose of the housing authorities serving the two branches of the Passamaquoddy Tribe). The Housing Authority was organized pursuant to Maine state law. *See* 5 M.R.S.A. § 12004–I(33) (1989); 30–A M.R.S.A. § 4995 (1996);[4] 22 M.R.S.A. § 4733 (repealed 1993). While the Housing Authority is governed by a Board of Commissioners appointed by the Passamaquoddy Tribal Governor and confirmed by the Tribal Council, this arrangement is specifically authorized by state statute. *See* 30–A M.R.S.A. § 4995. The Housing Authority is neither a predecessor nor a successor to the Passamaquoddy Tribe of 1789. Because the Housing Authority is not the tribe, it cannot take advantage of protections designed for the tribe.[5]

[¶ 9] The Housing Authority may not rely on section 6206(1). Without that shield from state jurisdiction, the Housing

---

Tribe, with separate councils at the Indian Township and Pleasant Point Reservations. 30 M.R.S.A. § 6203(7) (1996).

4. Two statutes provide the legal basis for the creation of the Housing Authority in this case. Section 12004–I places the Housing Authority within the context of other state-created organizations.

**12004–I. Advisory boards; boards with minimal authority**

The primary responsibilities and powers of advisory boards and boards with minimal authority include the responsibility and authority to advise state agencies, review policies and procedures, conduct studies, evaluate programs and make recommendations to the state agencies, the Legislature or the Governor.

This classification includes the following.

| FIELD | NAME OF ORGANIZATION | RATE OF COMPENSATION | STATUTORY REFERENCE |
| --- | --- | --- | --- |
| **33.** Housing | Passamaquoddy Indian Authority—Pleasant | Not Authorized | 22 M.R.S.A. § 4733 |

5 M.R.S.A. § 12004–I(33) (1989). Section 4995 actually authorizes the existence of the Housing Authority based on state law.

**4995. Create respective tribal housing authorities**

The Passamaquoddy Tribe, the Penobscot Nation and the Houlton Band of Maliseet Indians are authorized by Title 5, section 12004, subsection 10 to create respective tribal housing authorities. The respective tribe, nation or band shall prescribe the manner of selection of the members, their terms and grounds for removal. Except as otherwise provided in this chapter or clearly indicated otherwise; the Maine Housing Authorities Act applies to the tribal housing authorities referred to in this chapter as "authority" or "authorities." The power of tribal housing authorities may be exercised only within the Indian territory of the respective tribe or nation or the trust land of the Houlton Band of Maliseet Indians. Tribal housing authorities are in substitution for any tribal housing authority previously existing under the laws of the State and assume all the rights and obligations of those predecessor housing authorities. The presently constituted tribal housing authority of the respective tribe or nation continues in existence and may exercise all the authority previously vested by law until the respective tribe or nation creates the tribal housing authority authorized by this section.

30–A M.R.S.A. § 4995 (1996).

5. Indian law commentators support this conclusion. The primary scholarly writer on Indian housing authorities (IHAs) like the Housing Authority here, has stated unequivocally that "state-created IHAs subject themselves to state civil and criminal jurisdiction by their very creation." Mark K. Ulmer, *The Legal Origin and Nature of Indian Housing Authorities and the HUD Indian Housing Program*, 13 AM. INDIAN L. REV. 109, 129 (1988).

Authority must be treated like any other municipal corporation—subject to the jurisdiction of our courts.[6]

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

---

6. Because we vacate the judgment, we need not reach the Housing Authority's additional claims of error. The Superior Court properly may choose to re-visit the Housing Authority's motions for amendment and attachment on remand.