2000 ME 29

**SOUTH PORTLAND ASSOCIATES**

v.

**CITY OF SOUTH PORTLAND.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 14, 2000.

Decided Feb. 18, 2000.

---

Richard A. Davis, Cape Elizabeth, for plaintiff.

Mary Kahl, Corporation Counsel, South Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

ALEXANDER, J.

[¶ 1] South Portland Associates (SPA) appeals from a summary judgment entered in the Superior Court (Cumberland County, *Cole, J.*) finding that the City of South Portland owns in fee simple absolute a parcel of land that it had taken from SPA by eminent domain in 1968, and that SPA did not have a right to repurchase the land. Because the City did not use the land taken for its described purpose, SPA contends that it was error for the trial court to conclude that SPA was not entitled by statute to repurchase the land at the price paid to it by the City in 1968. We affirm the judgment.

[¶ 2] The facts of this case are not in dispute.[1] In 1968, the City took by eminent domain the parcel of land that is the subject of this dispute. The City's stated purpose for taking the property was to build a west-end fire station. The City paid SPA $7300, the fair market value of the property in 1968. Through the years that followed, SPA questioned the City on numerous occasions as to its intentions to construct a fire station on the property.

[¶ 3] In June 1995, the City determined that construction of a west-end fire station on the property was not feasible. After making this determination, the City decided to sell the property. SPA advised the City that, if the City intended to sell the property, SPA wanted to repurchase it for $7300, the sum SPA was paid in 1968. The City offered to sell the property back to SPA, but for its current fair market value of around $250,000. Although the parties attempted to negotiate a fair price for the property, they were unable to reach an agreement, and SPA filed this declaratory judgment action.

[¶ 4] The trial court based its summary judgment on its conclusion that 30 M.R.S.A. § 4001 (1965) (*repealed* 1988)[2]

---

1. The parties presented to the trial court a joint statement of stipulated material facts from which they asked the court to determine their rights to the parcel of land.

2. At the time of the taking in 1968, section 4001 provided in pertinent part as follows:

   Any municipality upon petition in writing signed by at least 30 of its taxpaying citizens, directed to the municipal officers, de-scribing the land to be taken, as provided, and the names of the owners thereof so far as they are known, may, at a meeting of the legislative body of the municipality, direct such municipal officers to take suitable lands for public parks, squares, open areas, including marsh lands, swamps or wet-lands, as defined in section 3851, play-grounds, buildings for municipal purposes or a public library building. . . . When land

granted municipalities a fee simple absolute in properties acquired by eminent domain which was not subject to any reversionary interest in the former owner if the municipality failed to use the condemned property for the described purpose. Many jurisdictions recognize a general rule that when land has been acquired in fee simple absolute by eminent domain, the former landowner retains no rights in the land, and the public use may be abandoned or the land may be devoted to a different use, without any impairment of the estate acquired or reversion to the former owner. *See* 3 JULIUS L. SACKMAN ET AL., NICHOLS ON EMINENT DOMAIN § 9.07[7][f] (3rd ed.1999); *see also, e .g., Mainer v. Canal Auth. of State,* 467 So.2d 989, 991 (Fla.1985); *Board of Educ. of Unified Sch. Dist. 512 v. Vic Regnier Builders, Inc.,* 231 Kan. 731, 648 P.2d 1143, 1147 (1982).

[¶ 5] SPA does not dispute the fact that the City acquired a fee simple interest in the property in 1968. SPA asserts that it possesses a statutory right to a reconveyance of the property based on the last sentence of section 4001, which states that, "[l]and taken for the purposes described shall not be used for purposes other than those for which originally taken." 30 M.R.S.A. § 4001.[3]

■ [¶ 6] As the decision in this case will turn solely on a question of law, we review the trial court's decision on the issue *de novo. See Francis v. Pleasant Point Passamaquoddy Hous. Auth.,* 1999 ME 164, ¶ 5, 740 A.2d 575, 577; *see also Passamaquoddy Water Dist. v. City of Eastport,* 1998 ME 94, ¶ 5, 710 A.2d 897,

899 (stating that statutory interpretation is a question of law reviewed *de novo* ).

[¶ 7] In interpreting a statute, we have stated that:

[We] first examine[ ] the plain meaning of the statutory language seeking to give effect to the legislative intent, and we construe the statutory language to avoid absurd, illogical, or inconsistent results. In addition, we consider "the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved."

*Guardianship of Zachary Z.,* 677 A.2d 550, 552 (Me.1996) (citation omitted). As a plain reading of section 4001 does not reveal the Legislature's intent with respect to the mandate of its final sentence, we must look beyond the plain language in order to construe it.

[¶ 8] SPA cites statutes of other states that have provided reversion or repurchase rights to former owners of condemned properties. However, a careful reading of the statutes creating such rights of repurchase, when compared with the mandate of section 4001, demonstrates the flaws in SPA's argument. Statutes that have modified the general rule that eliminates all rights of the former owner of land taken by eminent domain in fee simple have set forth clear procedures delineating the rights of former owners of property. In Kentucky, the relevant eminent domain statute states in pertinent part that,

[d]evelopment shall be started on any property which has been acquired through condemnation within a period of

---

is taken under this section, the fee of such land may be taken and compensation assessed and paid accordingly.... Land taken for the purposes described shall not be used for purposes other than those for which originally taken.
30 M.R.S.A. § 4001 (1965), *repealed by* P.L. 1987, ch. 582, § A, 61 (effective February 26, 1988). Municipal eminent domain powers are presently governed by 30–A M.R.S.A. § 3101 (1996).

3. A similar limitation is contained in 30–A M.R.S.A. § 3101(2) which states:

. . . .

**2. Limitation on use.** Except as provided in paragraph A, land taken under this section may not be used for any purpose other than the purposes for which it was originally taken.

. . . .

30–A M.R.S.A. § 3101(2) (1996).

eight (8) years from the date of the deed to the condemnor or the date on which the condemnor took possession, whichever is earlier, for the purpose for which it was condemned. The failure of the condemnor to so begin development shall entitle the current landowner to repurchase the property at the price the condemnor paid to the landowner for the property. The current owner of the land from which the condemned land was taken may reacquire the land as aforementioned.

KY. REV. STAT. ANN. § 416.670(1) (Banks–Baldwin 1976). Using similar language, New York provides that,

[i]f, after an acquisition in fee pursuant to the provisions of this chapter, the condemnor shall abandon the project for which the property was acquired, and the property has not been materially improved, the condemnor shall not dispose of the property or any portion thereof for private use within ten years of acquisition without first offering the former fee owner of record at the time of acquisition a right of first refusal to purchase the property at the amount of the fair market value of the property at the time of such offer.

N.Y. EMINENT DOMAIN PROCEDURE LAW § 406 (McKinney 1982).[4]

[¶ 9] These statutes demonstrate a clear legislative intent to depart from the general rule and provide the former owner with a procedure for redemption of land acquired by eminent domain, if the condemnor subsequently determines that it no longer needs the land. They provide for both the time allotted for a reconveyance and the price at which the former owner is entitled to repurchase the land. The disputed language of section 4001 provides

for neither; nor can it rationally be argued that the ambiguity of the last sentence demonstrates any legislative intent to set up such a procedure.

■ [¶ 10] As demonstrated by the statutes described above, the Maine Legislature, if it so desired, could have established a procedure in section 4001 by which former landowners could repurchase the property taken. In the absence of any such specific procedure, we will not infer an intent to provide one from the ambiguous sentence in section 4001 that is the focus of this dispute. We construe the last sentence of section 4001 as directory to the entity acquiring the property by eminent domain, but without creating any reversion or enforcement rights in the party from whom the fee simple absolute was acquired.

The entry is:

Judgment affirmed.

---

**4.** In addition to New York and Kentucky, several other states have enacted statutes providing for some specific right to reconveyance to former owners of land acquired by eminent domain. *See, e.g.,* N.H. REV. STAT. ANN. § 498–A:12 (1988) (providing right of former owner to repurchase property if abandoned within 10 years of condemnation); ARK. CODE ANN.

§ 6–13–103 (Michie 1991) (permitting former landowner to repurchase condemned property within one year of a subsequent abandonment by the condemnor); N.C. GEN. STAT. § 136–19 (1992) (stating condemnor must give first consideration to an offer from former owner to repurchase land previously condemned but no longer needed).