STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS.
CLERK'S OFFICE

SEP 19   2 49 PM '00

SUPERIOR COURT
Civil Action
Docket No. CV-00-329

GREAT NORTHERN PAPER, INC.,               )
GEORGIA PACIFIC CORPORATION and          )
CHAMPION INTERNATIONAL CORPORATION,  )
                                          )
            Plaintiffs,                   )
                                          )
v.                                        )       **DECISION AND ORDER**
                                          )
THE PENOBSCOT INDIAN NATION,              )
RICHARD HAMILTON,                         )
THE PASSAMAQUODDY TRIBE,                  )
RICHARD M. DOYLE and RICHARD STEVENS      )
                                          )
            Defendants,                   )
                                          )
            and                           )
                                          )
STATE OF MAINE,                           )
                                          )
            Intervenor.                   )

## FACTUAL BACKGROUND

Plaintiffs, three paper companies, own and operate pulp and paper mills that discharge treated wastewater into rivers upstream and downstream of the Penobscot Indian Reservation and downstream of the Indian Township Reservation of the Passamaquoddy Tribe. All three companies hold federal and state discharge licenses that authorize the wastewater discharges.

On May 10, 2000, Plaintiffs sent written requests to the Penobscot Nation and Passamaquoddy Tribe (collectively referred to as "Tribes") to inspect documents pursuant to the Freedom of Access Act ("FOAA"), 1 M.R.S.A. §§ 401-52. Specifically, the Plaintiffs sought materials related to

(1) the regulation of water resources within Penobscot Indian Territory and in adjacent waters, including the Penobscot River,

(2) the State's application to obtain delegation of permitting authority under the Clean Water Act's National Pollutant Discharge Elimination System program,

(3) the Tribes' alleged authority to regulate water resources within or adjacent to Indian territory,

(4) the Tribes' efforts to obtain "treatment as a State" status pursuant to the Clean Water Act,

(5) the Tribes' efforts to have the Environmental Protection Agency adopt water quality standards different from those of Maine, and

(6) agreements with federal government agencies relating to the protection or study of water.

The Tribes replied on May 18, 2000, stating that the FOAA is not applicable because applying the FOAA to the Passamaquoddy Tribe and Penobscot Nation would constitute state interference with internal tribal matters. They also claimed that the documents were privileged because the Tribes are or will be involved in litigation regarding use of the waters in the Indian territory and the papers are privileged litigation records.

Plaintiffs filed a complaint in the Superior Court against Defendants on May 22, 2000 alleging that the failure to allow Plaintiffs to inspect and copy all requested records violated FOAA. Plaintiffs moved for partial summary judgment on the issue of whether the Defendants must disclose those records that are responsive to the Plaintiffs' FOAA requests. Defendants moved to dismiss on the ground that this Court lacks subject matter jurisdiction because the Defendants are protected from state regulation pursuant to the Maine Indian Claims Settlement Act of 1980.

## DISCUSSION

### I. Jurisdiction

Pursuant to the Maine Indian Claims Settlement Act, 25 U.S.C. §§ 1721-35 (1995) ("Settlement Act") and the Maine Implementing Act, 30 M.R.S.A. §§ 6201-14 (1996 & Supp. 1999) ("Implementing Act"), the Passamaquoddy Tribe and Penobscot Nation expressly agreed to be subject to the laws of Maine. See 25 U.S.C. § 1725; 30 M.R.S.A. § 6204. "Internal tribal matters," such as tribal membership, the right to reside in Indian territory, tribal organization, tribal government, tribal elections and the use of the settlement fund, however, are not subject to regulation by the State. See 30 M.R.S.A. § 6206(1).

The Tribes rely on Penobscot Nation v. Fellencer, 164 F.3d 706, 708 (1st Cir. 1999) to argue that interpretation of the phrase "internal tribal matters" lies solely in the hands of federal courts. Fellencer, unlike this case, did not involve direct application of Maine laws to the tribes. Instead, it involved whether the decision of the Tribal Council to terminate the employment of a community health nurse was an "internal tribal matter." See id. at 713. Although in Fellencer the First Circuit noted that the meaning of the phrase "internal tribal matters" raises a question of federal law, nowhere in that case is it asserted that state courts do not have the power to interpret this phrase. See id. at 708. In fact, the internal matters exception has been interpreted by the Law Court. See Penobscot Nation v. Stilphen, 461 A.2d 478, 489 (Me. 1983), appeal dismissed for want of a substantial federal question, 464 U.S. 923 (1983).

3

Nearly identical to this case, it was argued in <u>Stilphen</u> that the Penobscot Nation's beano games were not subject to State regulation because they involved an internal tribal matter. <u>See id</u>. at 481. The Law Court, in interpreting the phrase "internal tribal matters" to find that using beano funds for tribal government purposes did not render beano an internal tribal matter, held the direct attempt by the State of Maine to enforce its laws against the Penobscot Nation valid. <u>See id</u>. at 489. It is clear that, although the Tribes may have an "internal tribal matters" defense to the FOAA claim, this Court does not lack jurisdiction to hear the suit.

## II. Applicability of FOAA

Pursuant to 1 M.R.S.A. § 408 (1989), "every person shall have the right to inspect and copy any public record during the regular business hours of the custodian or location of such record." "Public records" are defined as any written, printed or graphic matter from which information can be obtained that is

> in the possession or custody of an agency or public official of this State *or any of its political subdivisions*...and has been received and prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business...

1 M.R.S.A. § 402(3) (1989 & Supp. 1999) (emphasis added).

The Tribes argue that because their governmental deliberations and undertakings are those of separate sovereigns under the Settlement and Implementing Acts, they cannot be political subdivisions of the State and therefore FOAA cannot apply. The Tribes, however, have failed to recognize the special

4

relationship between the Tribes and the State of Maine pursuant to the Implementing Act.

The relationship between the Tribes and the State of Maine as created by the Settlement and Implementing Acts did not confer upon the Tribes the status of an independent nation. Section 1725(b)(1) of the Settlement Act states that the Tribes "shall be subject to the jurisdiction of the State of Maine to the extent and in the manner provided in the Maine Implementing Act." According to 30 M.R.S.A. § 6204, the Tribes and the State of Maine expressly agreed that, with very limited exceptions, all Indians, Indian nations and tribes "shall be subject to the laws of the State and to the civil and criminal jurisdiction of the courts of the State."

According to 30 M.R.S.A. § 6206(1), the Tribes

> shall be subject to all the duties, obligations, liabilities and limitations of a municipality of and subject to the laws of the State, provided, however, that internal tribal matters, including membership in the respective tribe or nation, the right to reside within the respective Indian territories, tribal organization, tribal government, tribal elections and the use or disposition of settlement fund income shall not be subject to regulation by the State.

Explained another way, when the Tribes function as municipalities of Maine they are reachable under state and federal law, but when they function as a tribe as to internal matters they are not. See Akins v. Penobscot Nation, 130 F.3d 482, 485 (1st Cir. 1997). This distinction illustrates that the terms tribal government and internal tribal matters are not necessarily synonymous.

For purposes of FOAA, the Tribes' designation as a municipality when acting in a governmental capacity confers upon them the status of a "political

5

subdivision." See Couturier v. Penobscot Indian Nation, 544 A.2d 306, 307 (Me. 1988) (holding that the term "governmental entity" under the Maine Tort Claims Act, which encompasses "political subdivisions," includes the Penobscot Nation when acting in a governmental capacity). While a definition of political subdivision is not provided in FOAA, it is defined elsewhere to include municipalities. See 30-A M.R.S.A. § 2252 (1996). FOAA, therefore, may be applied to the Tribes when they are functioning like municipalities.

III. The "Internal Tribal Matters" Exception

In this case, the Plaintiffs' FOAA requests do not infringe upon the Tribes' "internal matters." According to 30 M.R.S.A.§ 6206 (1), the Tribes are subject to all the duties and liabilities of a municipality and subject to the laws of the state unless the subject is an "internal tribal matter." The Settlement acts do not define this phrase. See Francis v. Pleasant Point Passamaquoddy Housing Authority, 1999 ME 164, ¶7, 740 A.2d 575, 577. The relationship between Maine and the Maine tribes is different from that between other states and their natives; here, the relationship is governed only by the Maine and federal laws approving the settlement. See Akins, 130 F.2d at 483 ("[w]hile defining what constitutes an internal matter controlled by Indian tribes is hardly novel in Native American law, it is novel in this context"). Excepting tribes from state regulation for internal tribal matters was intended to protect "certain areas of particular cultural importance." Stilphen, 461 A.2d at 490.

The subject matter of the records requested under FOAA relates to efforts by the Tribes to regulate natural resources of the State and to obtain authority over

6

these resources, not the inner-workings of the tribes. That regulation of water resources is not an internal tribal matter is also consistent with previous interpretations of this phrase. In <u>Stilphen</u>, the Law Court noted that by the very nature of the matters listed as internal matters in § 6206(1), "action by the Nation *directly* affecting [the listed matters] would not tend to bring the Nation into conflict with state laws of general application." <u>Stilphen</u>, 461 A.2d at 489 (emphasis added). That Court went on to hold that operating illegal beano games was not consistent with the listed terms and therefore was not an internal tribal matter. <u>See</u> <u>id</u>. Applying that reasoning to this case, it is clear that the Tribes' attempted regulation of water resources that are deemed to be subject to the laws of the state under the Implementing Act would tend to bring the Tribes directly into conflict with state laws protecting Maine waters. <u>See</u> 38 M.R.S.A. §§ 401 <u>et seq</u>.

In <u>Akins</u>, the First Circuit set forth five factors for consideration in determining whether particular subjects are "internal tribal matters." <u>See</u> <u>Akins</u>, 130 F.3d at 486-87. They are whether

(1)     the tribal activity purports to regulate only members of the tribe
(2)     the tribal activity concerns lands acquired with federal funds
(3)     the tribal activity affects the Tribes' ability to regulate its natural resources
(4)     the tribal activity does not implicate or impair an interest of the state of Maine
(5)     a finding of internal tribal matters is consistent with prior legal understandings

<u>See id.</u>

7

The application of these factors weighs in favor of finding regulation of water resources not to be an internal tribal matter. First, it is clear that water regulation affects both members and non-members of the Tribes. Grouping the second and third factors together, although water regulation concerns lands acquired with federal funds and affects the Tribes' ability to regulate its natural resources, it also affects lands and the regulation of natural resources outside Indian Territory. In Akins, the First Circuit held that issuance of stumpage permits was an internal tribal matter in part because it concerned only lands acquired with federal funds and such activity affected the Tribes' ability to harvest natural resources from the land. See id. This case is clearly distinguishable from Akins, however, because stumpage permits would not have an effect on lands outside Indian Territory. Unlike lumber, water does not consist of stable, non-moving particles. Instead, water is a constantly flowing substance and will affect other lands and waters not in Indian Territory.

The fourth factor also supports a conclusion that the records production is not an interference in internal tribal matters because the activity of water regulation definitely implicates and impairs an interest of the state of Maine. Currently, pollution control and regulation of discharge into the water is within the power and control of the federal government and the state of Maine. Any efforts by the Tribes to regulate water resources, obtain "treatment as a State" status, or adopt water standards different from those of Maine would impair Maine's interest in pollution control.

Finally, a finding of internal tribal matters would not be consistent with prior

8

legal understandings as to the relationship between the state of Maine and the Tribes. By virtue of the Implementing Act, the Tribes and their natural resources are subject to Maine environmental protection laws. <u>See</u> 30 M.R.S.A. 6204. To find otherwise is to disregard that the statute and case law hold the Tribes to be subject to the laws of the State. <u>See</u> 30 M.R.S.A. § 6204 (Indian lands and other natural resources owned by them are subject to the laws of the State); <u>Couturier</u>, 544 A.2d at 307 (holding the Penobscot Nation is subject to the Maine Tort Claims Act when acting in a governmental capacity); <u>Stilphen</u>, 461 A.2d at 490 (holding beano games on Indian territory are not exempt from the State's licensing scheme).

The entry is

Plaintiff's Motion for Partial Summary Judgment is GRANTED.

Defendant's Motion to Dismiss is DENIED.

Defendant's Motion to Stay Proceedings is DISMISSED AS MOOT.

Plaintiff's Motion to Amend or Alter Scheduling Order is GRANTED insofar as the Defendants are required to turn over all non-privileged documents as well as logs of all documents claimed to be privileged no later than 14 days from the date of this order.

Dated at Portland, Maine this 19th day of September, 2000.

Robert E. Crowley
Justice, Superior Court

9

Date Filed __05/22/00__ ____Cumberland____ Docket No. _CV-00-329_
County

Action _____FREEDOM OF ACCESS_____

GREAT NORTHERN PAPER, INC.
CHAMPION INTERNATIONAL CORPORATION
GEORGIA-PACIFIC CORPORATION

PENOBSCOT INDIAN NATION
RICHARD H. HAMILTON, CHIEF
THE PASSAMAQUODDY TRIBE
RICHARD M. DOYLE, GOVENOR

vs.

| Plaintiff's Attorney | Defendant's Attorney    722-1941 |
|---|---|

Plaintiff's Attorney
CATHERINE R. CONNORS ESQ
MATTHEW MANAHAM, ESQ  791-1100
ONE MONUMENT SAUARE   PM 04101

Defendant's Attorney   722-1941
GREGORY SAMPLE ESQ  (Passamaquoddy)
245 Commercial St. PM 04101

KAIGHN SMITH JR ESQ (Penobscot) Box 9781, E
MARK A CHAVAREE ESQ           Me. 04104-5(
6 River Rd., Indian Isalnd, Old Town,
Me 04468

DONALD L. GARBRECHT
LAW LIBRARY

OCT 11 2000

WILLIAM STOKES, AAG (STATE) 626-8800
6 STATE HOUSE STATION
AUGUSTA, MAINE 04333-0006

| Date of Entry | |
|---|---|
| 2000 May 23 | Received 05/22/00: Complaint Summary Sheet filed. |
| "    " | Complaint Under Maine's Freedom of Access Act with Exhibits A and B filed. |
| May 31 | Received 05/31/00: "Summons filed showing officer's return of service on 5/25/00 upon Richard H. Hamilton, Chief Penobscot Indian Nation. |
| "    " | "Summons filed showing officer's return of service on 5/25/00 upon Penobscot Indian Naiton Richard H. Hamilton, Chief to Linda Socoby, clerk. |
| "    " | "Summons filed showing officer's return of service on 5/26/00 upon The Passamaquoddy Tribe Richard M. Doyle, Governor Richard Stevens, Governor to Mary Lola clerk. |
| "    " | "Summons filed showing officer's return of service on 5/26/00 upon the Passamaquoddy Tribe Richard M. Doyle, Governor to Mary Lola, clerk. |
| "    " | "Summons filed showing officer's return of service on 5/26/00 upon the Passamaquoddy Tribe Richard Stevens, Governor to Mary Lola, clerk. |
| "    " | "Summons filed showing officer's return of service on 5/26/00 upon Richard Stevens, Governor The Passamaquoddy Tribe to mary Lola, clerk |
| "    " | "Summons filed showing officer's return of service on 5/26/00 upon Richard M. Doyle, Governor The Passaquoddy Tribe to Mary Lola, Clerk. |
| June 13 | Received 06-09-00: Defendants, the Penobscot Indian Nation, Richard H. Hamilton, Chief of the Penobscot Indian Nation, the Passamaquoddy Tribe, Richard M. Doyle, Governo of Pleasant Point Passamaquoddy Reservation, and Richard Stevens, Governor of Indian Township Passamaquoddy Reservation Answer and Affirmative Defense filed. |
| June 13 | Received 06/12/00: Plaintiff's Motion for Partial Summary Judgment filed. |
| ""    "" | Memorandum of law in Support of Plaintiff's Motion for Partial Summary Judgment filed. |
| ""    "" | Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment filed. |