STATE OF MAINE
WASHINGTON, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-02-07
AMSI - WAS - 12/3 8002

PAMELA FRANCIS          )
                        )
        Plaintiff       )
                        )
v.                      )
                        )
COLLEEN DANA-CUMMINGS   )
                        )          DECISION AND
        Defendant       )          JUDGMENT
                        )
v.                      )
                        )          DONALD L. GARBRECHT
                        )          LAW LIBRARY
PLEASANT POINT PASSAMAQUODDY )
HOUSING AUTHORITY       )
                        )          DEC 13 2002
        Third Party Defendant )

Pending before the Court is the Third Party Defendant's, Pleasant Point Passamaquoddy Housing Authority, Motion to Dismiss the third party complaint for failure to state a claim upon which relief can be granted pursuant to M.R. Civ. P. 12(b)(6). In the alternative the Pleasant Point Passamaquoddy Housing Authority requests the Court to stay the matter pending resolution of a parallel matter in the Passamaquoddy Tribal Court. For the following reasons the Third Party Defendant's Motion to Dismiss is granted. In addition the Court dismisses the underlying Complaint for failure to state a claim and want of jurisdiction.

### Background

The Plaintiff, Pamela F. Francis, ("Plaintiff") alleges she is a member of the Passamaquoddy Indian Tribe (the "Tribe") and claims ownership of a private residence on the Pleasant Point Passamaquoddy Reservation (the "Reservation").

1

The Defendant, Colleeen Dana-Cummings ("Cummings"), is the former Executive Director of the Pleasant Point Passamaquoddy Housing Authority ("Authority"). The Plaintiff claims Cummings directed several employees of the Authority to break into her residence, remove the furnishings, change the locks, and place a sign on the door stating that the residence was the property of the Authority. The Plaintiff alleges that Cummings did so without giving her prior notice.

At the time of the alleged break-in, Ralph Dana ("Dana") occupied the Plaintiff's residence. The Plaintiff alleges Dana asked Cummings to stop what she was doing and claims Cummings told Dana that she did not have the authority to evict the Plaintiff by breaking in or removing her belongings and had not given the Plaintiff prior notice. Cummings refused to instruct her employees to cease their activities and ordered Dana to leave the premises.

The Plaintiff states that the Authority, pursuant to Cumming's instructions, broke her door and removed many of her household furnishings. The Authority returned most of her belongings but the Plaintiff alleges the Authority returned some of her belongings damaged or destroyed. In order to respond to the situation the Plaintiff left work, took her daughter out of school, and traveled to Perry. As a result of the break-in the Plaintiff claims she suffered a loss of income, inconvenience, expense and emotional distress.

The complaint alleges a violation of the Maine Civil Rights Act 5 M.R.S.A. § 4682, trespass pursuant to 14 M.R.S.A. § 7551-B, and an illegal eviction pursuant to 14 M.R.S.A. § 6014. Apparently the Plaintiff has brought similar claims against Cummings and the Authority in Tribal Court. In response to the Plaintiff's complaint Cummings claimed respondeat superior and filed a third party complaint against the Authority. The

2

Authority then filed the present Motion to Dismiss for failure to state a claim upon which relief may be granted and for want of jurisdiction. In the alternative the Authority has requested the Court to stay this case, pending resolution of the parallel case in Tribal Court.[1]

## Arguments

The Authority argues the Court should dismiss the matter because the central issue is the ownership of property within the reservation, which is an internal tribal matter and not subject to regulation by the state pursuant to the Maine Indian Claims Settlement Act, 30 M.R.S.A. §6201-6206 ("MICSA") as authorized by the Maine Indian Claims Settlement Act, 25 U.S.C.A. § 1721-1735. In the alternative the Authority requests that the Court stay the matter pending resolution of a parallel suit in the tribal courts involving the same parties and claims.

Cummings notes that the Authority is not a branch of the Passamaquoddy tribal government and therefore cannot avoid state court jurisdiction under the MICSA. Cummings further contends that even if the Tribal Court rules that the Authority owns the property in question, the Plaintiff can still collect money damages for wrongful eviction as part of her state court claim. If the court were to grant the stay of the third party complaint pending resolution of the tribal court matter, the Plaintiff could win her state court suit and subject her to a damage award before she can assert and litigate the Authority's responsibility. Cummings further notes that if the Court were to dismiss the third party complaint for failure to state claim and want of jurisdiction the Court should additionally dismiss the underlying complaint.

---

[1] The Authority filed the original motion on August 15, 2002, and then filed the present amended motion on August 16, 2002.

The Plaintiff also points out that since the Authority is not a branch of the Passamaquoddy tribal government they cannot avoid state court jurisdiction. The Plaintiff further contends that the issues regarding home ownership, which she raised in tribal court, have nothing to do with the present state court claims.

## Discussion

A motion to dismiss, pursuant to M.R.Civ.P. 12(b)(6), tests the legal sufficiency of the complaint. Thompson v. Department of Inland Fisheries and Wildlife, 2002 ME 78, ¶4, 796 A.2d 674. The court accepts the material allegation of the complaint as admitted and examines the complaint in the light most favorable to the plaintiff. Id. A dismissal for failure to state claim is proper only when it appears beyond doubt that any set of facts a plaintiff might prove at trial would not entitled to him to relief. Id.

The Authority alleges the MICSA applies to the present case because the underlying claim for each count in the Plaintiff's complaint evolves around ownership, and possible inheritance, of lands and property located on the reservation as well as internal tribal law regarding landlord-tenant disputes. The Authority argues that those claims involve internal tribal matters, which are not subject to state regulation. Cummings and the Plaintiff point out that recent court decisions have held that the Authority is not a branch of the tribal government and therefore the MICSA does not prevent the hearing and deciding of the matter in a state court.

The Court ruled in Francs v. Pleasant Point Passamaquoddy Housing Authority, 1999 ME 164, ¶8, 740 A.2d 575, that the Tribe organized the Authority pursuant to Maine state law and the Authority is neither a predecessor nor a successor to the Passamaquoddy Tribe and therefore may not take advantage of the protections the

MICSA grants to the tribes. The Court in Francis dealt with an internal contract dispute between a member of the Authority and the Authority itself. The Court found that the Authority was acting as a municipal body, organized under statute, and subject to the same regulations as other municipal bodies. In the case presently before the Court, the Authority is acting as a municipal body, but it is acting pursuant to Tribal law and internal land regulations. Depending on the activity and *circumstances* a Tribe engages in, the court may recognize the Tribe as a sovereign nation, a person or other entity, a business corporation, or a municipal government. Great Northern Paper, Inc. v. Penobscot Nation, 2001 ME 68, ¶41, 770 A.2d 574 (emphasis added).

The Court has established a framework to determine when state law is applicable to the Tribes. Id at ¶42. The Court determines what entity the statute applies too, whether or not the Tribes are acting in the capacity of such entities, if the MICSA prohibits the application of the statute to the Tribes generally and if not, if the MICSA prohibits the application of the statute in the circumstances before the court. Id. According to Francis the MICSA does not protect the Authority in the way it protects the tribes and therefore, the only question is whether the MICSA prohibits the application of the statutes to the circumstances before the court.

The relevant portion of the MICSA states:

The Passamaquoddy Tribe and the Penobscot Nation, within their respective Indian territories, shall have, exercise and enjoy all the rights, privileges, powers and immunities, including but without limitation, the power to enact ordinances and collect taxes, and shall be subject to all the duties obligations, liabilities and limitations of a municipality or and subject to the laws of the State, provided, however, that internal tribal matters, including membership in the respective tribe or nation, the right to reside within the respective Indian territories, tribal organization, tribal government, tribal elections and the use or disposition of settlement fund income shall not be subject to regulation by the State. 30 M.R.S.A. §6206.

The Court must determine whether the circumstances before the court amount to an "internal tribal matter." There is no question that the State may not interfere with such matters. Great Northern Paper, 2001 ME at ¶46. Because the above statute contains the word "including" before listing various internal tribal matters, the specific categories are exemplars and not exclusive. Akins v. Penobscot Nation, 130 F.3d 482, 486 (1st Cir. Me. 1997). The MICSA and the federal authorizing statute govern the relationship between the State of Maine and the Tribes. Therefore, when courts interpret the phrase "internal tribal matter" they look to the MICSA itself and the First Circuit Court of Appeals interpretation of the MICSA. Great Northern Paper, 2001 ME at ¶14.

Congress' authority to legislate over Indian affairs is plenary and only Congress can abrogate or limit an Indian tribe's sovereignty. Penobscot Nation v. Fellencer, 164 F.3d 706, 709 (1st Cir. 1999). Courts must construe acts that diminish the sovereign rights of Indian tribes strictly. Id (citing Rhode Island v. Narragansett Tribe, 19 F.3d 685, 702 (1st Cir. 1994).[2] Courts employ these statutory rules to comport with traditional notions of sovereignty and the federal policy of encouraging tribal independence. Id.

The Court in Akins has suggested several factors that the Court may consider when determining if a dispute concerns an "internal tribal matter" and they include: (1) the effect on nontribal members, (2) and (3) the subject matter of the dispute, particularly when related to Indian lands, (4) the interests of the State of Maine, and (5) prior legal understanding. Great Northern Paper, at ¶ 49 (citing Akins 130 F.3d 486-87.)[3] The Court in Akins used these factors to determine that the regulation of stumpage permits

---

[2] A similar claims settlement act governs the Narragansett Tribe in Rhode Island. Akins, 130 F.3d at n.2.

[3] These factors are not exclusive or dispositive. Great Northern Paper, 2001 ME at ¶49.

was an internal tribal matter where the policy dealt with tribal members and resources within tribal territories. Id.

In the present matter the dispute involves two tribal members and conduct occurring on the reservation arising out of tribal law and regulations relating to ownership of tribal housing. These laws and regulations have no effect on nontribal members. The subject matter is tribal law and policy regarding various property issues. The tribe's treatment of its members, particularly when dealing with commercial interests, is not of central concern to Maine. Akins 130 F.3d, at 488. With these factors in mind the Court must review prior legal understanding regarding the definition of "internal tribal matters."

Tribes act with regard to internal tribal matters when they engage in the deliberative processes of self-government. Great Northern Paper Inc., 2001 ME at ¶60. When a tribe is engaged in efforts to provide housing to tribal members it is a fairly obvious exercise of its government functions. Ninigret Development v. Narragansett Indian Wetuomuck Housing Authority, 207 F.3d 21, 32 (1st. Cir. 2000). The Tribes have retained exclusive jurisdiction over certain juvenile, civil, criminal and domestic relations matters. Great Northern Paper Inc., 2001 ME at ¶39. The record reveals that the Tribe has an eviction code in place as well as a policy regulating property and home ownership on the reservation.

Final Committee Reports on the federal statute that authorized the MICSA state that:

> "While the settlement represents a compromise in which state authority is extended over Indian territory to the extent provided in the Maine Implementing Act [MICSA], ... the settlement provides that henceforth the tribes will be free from state interference in the exercise of their internal affairs. Thus, rather than

destroying the sovereignty of the tribes, by recognizing their power to control their internal affairs... the settlement strengthens the sovereignty of the Maine Tribes." Akins, 130 F.3d at 489, quoting S.Rep. No. 96-957, at 14; H.R. Rep. No. 96-1353, at 14-15, U.S. Code Cong. & Admin. News 1980, at 3790.

When authorizing the MICSA Congress referenced prior federal Indian law and while this does not mean that Congress attempted to invoke all of prior Indian law, general federal Indian case law is helpful when interpreting the MICSA. Akins, 130 F.3d at 489. The Court in White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 144 (1980), stated that, "When on-reservation conduct involving only Indians is at issue, state law is generally inapplicable, for the State's regulatory interest is likely to be minimal and the federal interest in encouraging tribal self-government is at its strongest." Akins, 130 F.3d at 490.

Precedent and legislative history confirm that the present case, involving a dispute between two members of the Tribe over conduct that occurred on the reservation regarding tribal home ownership policy and landlord tenant law, is an "internal tribal matter". Although the Authority cannot generally claim the protections of the MICSA the circumstances present here prevent state court involvement. Additionally, for the same reasons stated above, the present circumstances prevent state court involvement with the underlying complaint.

THE DOCKET ENTRY IS:

The Complaint and the Third Party Complaint are dismissed for failure to state a claim upon which relief can be granted.

The clerk is ordered to incorporate this decision into the docket by reference.

_____
Justice, Superior Court

DATED:      December 6, 2002.

**FILED**

DEC - 9 2002

MARILYN E. BRALEY Clerk

8

PAMELA F FRANCIS  - PLAINTIFF
29 PORTLAND AVE
OLD ORCHARD BEACH ME 04064
Attorney for: PAMELA F FRANCIS
~~CURTIS WEBBER~~
LINNELL CHOATE & WEBBER LLP
PO BOX 190
AUBURN ME 04212-0190


vs
COLLEEN DANA-CUMMINGS  - DEFENDANT
PLEASANT POINT
PERRY ME 04667
Attorney for: COLLEEN DANA-CUMMINGS
NORMAN TOFFOLON

PO BOX 58

MACHIAS ME 04654

PLEASANT POINT PASSAMAQUODDY HOUSING AUTHORIT - THIRD PARTY DEFENDANT

Filing Document: COMPLAINT
Filing Date: 02/13/2002

SUPERIOR COURT
WASHINGTON, ss.
Docket No   MACSC-CV-2002-00007


**DOCKET RECORD**

*Melissa Hewey, Esq.*

Minor Case Type: OTHER NON-PERSONAL INJURY TORT