2007 ME 16

**Pamela FRANCIS**

v.

**Colleen DANA–CUMMINGS et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 12, 2006.
Decided: Jan. 23, 2007.

Curtis Webber, Esq. (orally), Linnell, Choate & Webber, LLP, Auburn, for plaintiff.

Craig E. Francis, Esq. (orally), Falmouth, William H. Dale, Esq., Jensen Baird Gardner & Henry, (for Passamaquoddy Tribe), Kaighn Smith, Jr., Drummond Woodsum & MacMahon, Portland, (for Passamaquoddy Housing Authority), Norman P. Toffolon, Esq., Machias, for Passamaquoddy Tribe and defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, LEVY, and SILVER, JJ.

ALEXANDER, J.

[¶ 1] The Passamaquoddy Tribe (the Tribe) appeals from an order of the Superior Court (Washington County, *Hunter*, *J.*) denying the Tribe's motion to intervene in these consolidated matters pursuant to M.R. Civ. P. 24. After clarifying the issues that are before the Superior Court for decision, we vacate and remand.[1]

## I. CASE HISTORY

[¶ 2] The issues before us arise out of four separate lawsuits filed by Pamela Francis against the Passamaquoddy Housing Authority (PHA); its former Executive Director, Colleen Dana–Cummings; and several other members of the Passamaquoddy Tribe. The PHA is a quasi-municipal entity located on the Pleasant Point Passamaquoddy Reservation in Perry, Maine.

[¶ 3] Francis is a member of the Passamaquoddy Tribe and, in 1995, served as Executive Director of the PHA. After she was terminated from her employment, Francis brought a breach of contract and civil rights action against the PHA. The Superior Court dismissed the action, holding that it involved "internal tribal matters" over which Maine courts lacked jurisdiction by operation of 30 M.R.S. § 6206(1)

(2006). Title 30 M.R.S. § 6206(1) states, in pertinent part:

> Except as otherwise provided in this Act, the Passamaquoddy Tribe and the Penobscot Nation, within their respective Indian territories, shall have, exercise and enjoy all the rights, privileges, powers and immunities ... of a municipality of and subject to the laws of the State, provided, however, that internal tribal matters, including membership in the respective tribe or nation, the right to reside within the respective Indian territories, tribal organization, tribal government, tribal elections and the use or disposition of settlement fund income shall not be subject to regulation by the State.

[¶ 4] On appeal, we vacated the dismissal, holding that the PHA is not part of the Tribe but is, instead, an entity created by State statute that "must be treated like any other municipal corporation—subject to the jurisdiction of our courts." *Francis v. Pleasant Point Passamaquoddy Hous. Auth.*, 1999 ME 164, ¶¶ 8–9, 740 A.2d 575, 578–79 (*Francis I* ). Accordingly, the action was not subject to the jurisdictional limitation imposed on State courts by section 6206(1). *Id.* ¶ 9, 740 A.2d at 578–79.

[¶ 5] During some of the time that *Francis I* was pending and subsequently, Francis had resided in Old Orchard Beach. On or about February 24, 1998, representatives of the PHA entered and took possession of a residence that Francis had formerly occupied on the Passamaquoddy Reservation at Pleasant Point. Francis asserts that the residence was her private property, inherited from her father, and that she suffered the loss of household furnishings and other damages as a result of the entry into her residence.

---

1. All pending motions are resolved by publication of this opinion.

[¶ 6] On February 7, 2002, Francis filed a lawsuit in the Passamaquoddy Tribal Court against the PHA seeking damages under the Passamaquoddy Tribe's Fair Housing Code and Maine state law.[2] The PHA filed a counterclaim seeking to quiet title under tribal and federal United States Department of Housing and Urban Development (HUD) laws, and seeking injunctive relief to prohibit Francis from occupying, controlling, or possessing the property. The parties filed cross-motions for partial disposition. The Tribal Court (Point Pleasant Division, *Irving, J.)* held that "the Fair Housing Code of the Passamaquoddy Tribe of the Pleasant Point Reservation [as opposed to state law] provides the exclusive remedies available to the parties." Because of unresolved factual disputes, the case is pending for trial in Tribal Court on both Francis's affirmative claims for damages under the Fair Housing Code and PHA's counterclaim. The Tribal Court action has been stayed pending resolution of the Superior Court actions.

[¶ 7] On February 13, 2002, Francis filed a complaint in the Superior Court against Dana–Cummings alleging the same facts as those in her complaint in Tribal Court. Francis asserted violations of the Maine Civil Rights Act,[3] trespass,[4] and illegal entry[5] and eviction.[6] Dana–Cummings timely answered alleging affirmative defenses, claiming that Francis does not have an ownership interest in the property and that PHA lawfully took control of the property to protect it from frequent use by teenagers for drinking and drug abuse. Additionally, Dana–Cummings filed a third-party complaint alleging that she

was, at all times, acting under the direction of the PHA and therefore, the PHA is responsible for any damages that Francis may have suffered.

[¶ 8] Francis filed another lawsuit in the Superior Court in October 2002 against other individual members of the Passamaquoddy Tribe who served as PHA officials in February 1998, alleging the same facts and violations of the Maine Civil Rights Act.[7] The Superior Court *(Jabar, J.)* granted a motion to consolidate the two cases.

[¶ 9] The PHA, as a third-party defendant, filed a motion to dismiss under M.R. Civ. P. 12(b)(6), claiming that the state court lacked subject matter jurisdiction because the case involved an "internal tribal matter." Dana–Cummings argued that if the court dismissed her third-party complaint for failure to state a claim and want of jurisdiction, the Court should additionally dismiss the complaint against her. The Superior Court *(Mead, J.)* concluded that because the dispute was between members of the Passamaquoddy Tribe regarding conduct that occurred on the reservation, it was an "internal tribal matter." The court dismissed both the complaint and the third-party complaint for failure to state a claim. The only issue appealed was the dismissal of Francis's complaint against Dana–Cummings.

[¶ 10] We reviewed the Superior Court's judgment based solely on the facts as Francis alleged them because the trial court had treated the matter as a motion to dismiss pursuant to M.R. Civ. P. 12(b)(1). *Francis v. Dana–Cummings,* 2004 ME 4, ¶ 9, 840 A.2d 708, 710 *(Francis*

---

2. 14 M.R.S. § 6025(3) (2005); 14 M.R.S. § 7751–B (2005).

3. 5 M.R.S. § 4682(1–A) (2006).

4. 14 M.R.S. § 7751–B.

5. 14 M.R.S. § 6025(3).

6. 14 M.R.S. § 6014 (2006).

7. 5 M.R.S. § 4682(1–A).

*II* ). We vacated the Superior Court's judgment in favor of Dana–Cummings, concluding that the record was insufficient to establish whether the dispute was between two tribal members and whether the dispute arose "out of tribal law and regulations." *Id.* ¶¶ 12–15, 840 A.2d at 710–11. Without these facts on the record, we held that the motion court could not make the determination that the dispute constituted "an internal tribal matter," and we remanded the case. *Id.* ¶ 18, 840 A.2d at 711.

[¶ 11] On our remand, Dana–Cummings filed a motion for summary judgment based upon the court's alleged lack of subject matter jurisdiction, and the Superior Court (*Gorman, J.*) granted her motion.

[¶ 12] On February 18, 2004, Francis filed a complaint in Superior Court against the PHA itself, alleging the same facts and violations of the Maine Civil Rights Act[8] as in her prior suits against the individuals named in *Francis II.* The PHA filed a motion for summary judgment, based on the court's alleged lack of subject matter jurisdiction. The Superior Court (*Gorman, J.*) denied the motion.

[¶ 13] Both Francis and the PHA appealed the rulings adverse to them, which we consolidated. We held that only the Tribe, not its individual members, could "invoke the protections of the 'internal tribal matters' provision." *See Francis v. Dana–Cummings,* 2005 ME 36, ¶ 6, 868 A.2d 196, 199 (*Francis III* ). Because the Tribe was not a party to the action and we had concluded that the individual members lacked standing to raise the issue of subject matter jurisdiction, we affirmed the denial of summary judgment against the PHA and vacated the summary judgment in favor of Dana–Cummings. *Id.* ¶ 2, 868 A.2d at 198.

[¶ 14] On remand, the Tribe moved to intervene pursuant to M.R. Civ. P. 24, as a defendant in the consolidated cases. It simultaneously filed motions to dismiss for lack of subject matter jurisdiction or for summary judgment in both cases. The Superior Court (*Hunter, J.*) denied the Tribe's motions to intervene, and with intervention denied, dismissed its motions to dismiss or for summary judgment as moot. The court held that the Tribe had no right to intervention because the litigation involved claims that are personal to Francis and because the Tribe failed to demonstrate that it would be directly affected by the outcome of the litigation. The court also concluded that the Tribe's motion was untimely because the Tribe "has not previously sought to intervene over the many years" the litigation had been pending and because it found intervention at this stage would prejudice Francis.

■ [¶ 15] The Tribe appealed these decisions. The appeal is properly before us because the denial of a motion to intervene pursuant to M.R. Civ. P. 24, although interlocutory, may be immediately appealed by the moving party. *Donna C. v. Kalamaras,* 485 A.2d 222, 222–23 (Me.1984).

## II. LEGAL ANALYSIS

[¶ 16] Review of *Francis I, Francis II, and Francis III,* and the continuing assertion of claims by the PHA that its activities are subject to protection as "internal tribal matters" emphasizes the need for clarification of the status of the parties in light of our rulings in prior cases. The PHA was created in 1971. At the time, the Tribe had no independent governing authority and the State provided services on the Passamaquoddy Reservation equivalent to services a municipality would normally provide. *See Indian Township Pas-*

---

8.   5 M.R.S. § 4682(1–A).

samaquoddy Reservation Hous. Auth. v. Governor of Maine, 495 A.2d 1189, 1190–91 (Me.1985). To assure proper maintenance of municipal services in support of federal contributions to the PHA to provide low-income housing, the State was required to enter into a cooperation agreement with the PHA. *Id.* at 1190. The Tribe entered into a similar cooperation agreement with the PHA to provide services should the Tribe attain the capacity in the future to "furnish services to the reservation heretofore furnished by the State." *Id.* at 1190–91.

[¶ 17] In 1985, we determined that the cooperation agreement and commitments of the State were deemed discharged by operation of the Maine Indian Claims Settlement Act, 25 U.S.C.S. §§ 1721–1735 (2004), and the concurrent implementing legislation that provided limited sovereignty to the tribes and confirmed their authority to provide governmental services on the reservations. *Id.* The PHA continued, as it had since 1971, as an independently authorized quasi-governmental entity. *See* 30–A M.R.S. § 4995 (2006). The only change was that responsibility to provide supportive municipal services for PHA activities had changed from the State to the Tribe.

[¶ 18] Our ruling in *Francis I,* that the PHA was an entity separate from the Tribe that must be treated like any other municipal or quasi-municipal corporation, subject to the jurisdiction of the Maine courts, *Francis I,* 1999 ME 164, ¶ 9, 740 A.2d at 578–79, necessarily followed from the history of the PHA and similar Indian housing authorities addressed in our 1985 opinion. Despite *Francis I,* the PHA, and Dana–Cummings, as the PHA's employee, continued to maintain that the State courts lacked jurisdiction over Francis's action against them because their actions involved "internal tribal matters" addressed in 30 M.R.S. § 6206(1).

[¶ 19] The issue was presented again in *Francis III.* There the parties presented the issue to us solely as a question of who would have authority to invoke the protections for "internal tribal matters" provided by section 6206(1). Considering the way the issue was framed by the parties, as a question of who could invoke the protections of section 6206(1), and the history of *Francis I,* when we had determined that the PHA was not subject to the protections of section 6206(1), we decided as we did. We did not address the broader functions of section 6206, on the one hand, to provide respect and protection for the Tribe in those areas in which federal and state law have given the Tribe authority to act as sovereign and, on the other hand, to serve as a limitation on the authority of the State, including its courts, by specifying that in those areas where the Tribe acts as sovereign—in its "internal tribal matters"—the Tribe's activities "shall not be subject to regulation by the State."

[¶ 20] Because of the way the parties had framed the issue in *Francis III,* it was not necessary for our opinion to address the well-settled law that a court may notice and act on a question regarding its authority or jurisdiction at any time, either on its own motion or on motion of any party. *See* M.R.App. P. 4(d); M.R. Civ. P. 12(h)(3); M.R.Crim. P 12(b)(2); *In re Walter R.,* 2004 ME 151, ¶ 3, 863 A.2d 276, 277; *Collins v. State,* 2000 ME 85, ¶ 5, 750 A.2d 1257, 1260.

[¶ 21] This jurisprudence indicates that when a court, be it this Court or one of our trial courts, may lack jurisdiction over a particular proceeding because it would be subjecting an "internal tribal matter" to regulation by the State which is prohibited by section 6206(1), the court's lack of authority to hear the matter can be

called to the court's attention by any party or on the court's own motion. One sovereign need not, itself, appear before the courts of another sovereign to assert a limitation on that court's jurisdiction over affairs of the sovereign that the court is barred by statute from addressing. Thus we clarify that our opinion in *Francis III* did not change our long-standing jurisprudence that a statutory or constitutional limitation on a court's jurisdiction over a matter may be brought to the court's attention on the court's own motion or by any party. While only the Tribe may benefit from the prohibition on regulation of internal tribal matters addressed in section 6206(1), any party may assert that a court of the State lacks jurisdiction over a particular claim because court action on the claim would cause prohibited state regulation of an internal tribal matter.

[¶ 22] Accordingly, with the issues clarified by this opinion, we must remand the matter to the Superior Court. The Superior Court should proceed on remand, as directed in *Francis II,* to resolve factual disputes as to whether the actions at issue in this case, or any of them, represent "internal tribal matters" not subject to state regulation and thus, not subject to the jurisdiction of the Superior Court.

[¶ 23] Because of the confusion of issues that has existed in the past, we take this opportunity to address the context in which the further address of the protections regarding section 6206(1) should proceed in the Superior Court. In *Francis I* we have already determined that the PHA was acting in its capacity as a quasi-municipal corporation, separate and independent from the Tribe. As our 1985 opinion indicates, the PHA was established as a quasi-municipal entity prior to recognition of the Tribe's sovereignty in the 1980 legislation. Dana–Cummings, as the PHA's Executive Director and employee, could be treated as

the PHA for any of her actions taken in the course and scope of her employment with the PHA.

[¶ 24] On remand, when the Superior Court considers any issues regarding matters that may be "internal tribal matters," pursuant to section 6206(1), it must recognize that the Tribe may have a position and interests that are separate from and independent of the position of other parties to the litigation. The Tribe's interest in these issues may be separate from and independent of any interest that may be asserted by Francis, the PHA, or Dana–Cummings. Therefore, the Tribe should be permitted to intervene pursuant to M.R. Civ. P. 24(a) and to participate in these matters as appropriate to develop evidence and inform the court regarding whether the court is being asked to regulate an "internal tribal matter."

[¶ 25] For issues that are not deemed to be internal tribal matters and subject to the jurisdiction of the Tribal Court, the PHA is treated, pursuant to *Francis I,* as a quasi-municipal organization, *See* 14 M.R.S. § 8102(3) (2006); 30–A M.R.S. § 4741 (2006). In that status, the Superior Court will have to determine if PHA activities and the activities of its employees within the course and scope of their employment may be subject to the protections of the Maine Tort Claims Act 14 M.R.S. §§ 8101–8118 (2006). *See* 30–A M.R.S. § 4741(1), made applicable to the PHA by 30–A M.R.S. § 4995; *Doe v. Portland Hous. Auth.,* 656 A.2d 1200, 1201 n. 2 (Me.1995), *cert. denied* 516 U.S. 861, 116 S.Ct. 171, 133 L.Ed.2d 112 (1995). *See also Portland Water Dist. v. Town of Standish,* 2006 ME 104, ¶¶ 20–22, 905 A.2d 829, 835 (discussing the general applicability of sovereign immunity protections to quasi-governmental entities).

[¶ 26] Maine Tort Claims Act issues have not yet been raised in this case be-

cause the parties were focusing on section 6206(1). However, waiver of sovereign or governmental immunity or Tort Claims Act protections will not be inferred by inaction, by procedural default, or by a general rather than a limited appearance in an action. *Maynard v. Comm'r of Corr.*, 681 A.2d 19, 22–23 (Me.1996); *Rutherford v. City of Portland*, 494 A.2d 673, 675 (Me.1985); *Drake v. Smith*, 390 A.2d 541, 543 (Me.1978); *Turner v. Collins*, 390 A.2d 537, 540 (Me.1978). Beyond questions of the applicability of section 6206(1), these issues, and whether they have been properly presented and preserved, may have to be addressed by the Superior Court on remand.

The entry is:

Order denying the Tribe's petition to intervene vacated. Remanded to allow the Tribe to intervene in this matter pursuant to M.R. Civ. P 24(a) and for further proceedings consistent with this opinion and our opinion in *Francis II*.