STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-12-102

NATIONSTAR
MORTGAGE, LLC,

Plaintiff

v.

TIMOTHY E. HALFACRE,

Defendant

ORDER ON MOTION TO
VACATE JUDGMENT AND
TO DISMISS

STATE OF MAINE
Cumberland ss Clerk's Office

JUL 24 2015

RECEIVED

Background

The first complaint for foreclosure filed against defendant Halfacre in June 2009 was dismissed without prejudice. RE-09-134. The second complaint for foreclosure filed in April 2012 resulted in a judgment entered on May 10, 2013 in favor of defendant after trial. RE-12-102. No appeal of the judgment was filed. The third complaint for foreclosure filed in January 2014 resulted in a judgment entered in favor of defendant on a motion for summary judgment. RE-14-047. Defendant's counterclaim in the third action remains pending.

Before the court is plaintiff's motion pursuant to Rules 60(b)(4) and 41(a)(2) to vacate the judgment in the second complaint. RE-12-102. Plaintiff argues it had no standing to commence the suit and the judgment is, therefore, void.[1] A judgment is void when the court issuing the judgment lacks subject matter jurisdiction. See Coombs

---

[1] Plaintiff relies on the court's determination that the notice of right to cure was defective to argue additionally that plaintiff never accelerated the note and, therefore, there could be no foreclosure. (See 5/10/13 Order 4.) Evidence of a "properly served notice of default and mortgagor's right to cure in compliance with statutory requirements" is an element of proof required to foreclose. Bank of Am., N.A. v. Greenleaf, 2014 ME 89, ¶ 18, 96 A.3d 700.

v. Governmental Employees, Ins. Co., 534 A.2d 676, 678 (Me. 1987); see also M.R. Civ. P. 60(b)(4).

This court concluded after trial on the second complaint, "plaintiff has failed to prove by a preponderance of the evidence that it is entitled to judgment." (5/10/13 Order 5.) Neither standing nor subject matter jurisdiction was addressed during trial.

Discussion

The Superior Court has subject matter jurisdiction over complaints for foreclosure. 4 M.R.S. §§ 105, 152(5)(H) (2014); 14 M.R.S. §§ 6321-6326 (2014). In Norris Family Assocs., LLC v. Town of Phippsburgh, which involved a Rule 80B appeal, the Law Court announced that standing and subject matter jurisdiction are separate issues and did not follow its prior approach of considering standing as an element of subject matter jurisdiction. 2005 ME 102, ¶¶ 12-13, 879 A.2d 1007.

Since Norris Family Assocs., LLC, however, the separation between standing and jurisdiction has not been maintained consistently. In Mortgage Elec. Registration Sys. v. Saunders, the Law Court did not cite authority, but concluded plaintiff "lacked standing to institute foreclosure proceedings and could not invoke the jurisdiction of our trial courts." 2010 ME 79, ¶15, 2 A.3d 289. The court in Saunders stated, "a party's personal stake in the litigation is evidenced by a particularized injury to the party's property, pecuniary, or personal rights," and cited, among other cases, Stull v. First Am. Title Co. Saunders, 2010 ME 70, ¶ 7, 2 A.3d 289 (citing Stull, 2000 ME 21, ¶ 11, 745 A.2d 975). Stull provides that the issue of standing is jurisdictional and cites Singal v. Bangor. See Stull, 2000 ME 21, ¶ 11, 745 A.2d (citing Singal, 440 A.2d 1048, 1050 (Me. 1982). In Singal, the Law Court treated a party's standing to appeal an administrative decision as being an element of the court's subject matter jurisdiction. 440 A.2d at 1050.

The Court in Norris Family Assocs., LLC overruled this portion of Singal. 2005 ME 102, ¶ 13, 879 A.2d 1007.

In JP Morgan Chase Bank v. Harp, the Law Court stated, "standing relates to the court's subject matter jurisdiction and may be raised at any time, including during an appeal," and cited Francis v. Dana-Cummings. Harp, 2011 ME 5, ¶ 7, 10 A.3d 718 (citing Francis, 2007 ME 16, ¶ 20, 915 A.2d 412). The paragraph in Francis cited in Harp provides, "a court may notice and act on a question regarding its authority at any time, either on its own or on motion of any party." Francis, 2007 ME 16, ¶ 20, 915 A.2d 412 (citations omitted). Francis involved a challenge to the court's subject matter jurisdiction under a specific statute and did not address the relationship between standing and subject matter jurisdiction. See id. ¶ 21.

Most recently, in Bank of Am., N.A. v. Greenleaf, the Law Court concluded that the bank lacked standing to seek foreclosure on a mortgage and accompanying note, but did not discuss jurisdiction. 2014 ME 89, ¶ 17, 96 A.3d 700. The court in Greenleaf did cite both Harp and Saunders. 2014 ME 89, ¶ 9, 96 A.3d 700

Notwithstanding the inconsistencies in the relationship between subject matter jurisdiction and standing, the Law Court has affirmed a judgment in favor of a defendant after trial when the plaintiff did not have standing. See Sturtevant v. Town of Winthrop 1999 ME 84, ¶¶ 1, 6, 23, 732 A.2d 264. In Sturtevant, the Law Court affirmed the trial court's granting defendant's motion for a judgment notwithstanding the verdict based on defendant's argument that plaintiff lacked standing. Id. The Law Court also has vacated a judgment in favor of the plaintiff following a bench trial. Deutsche Bank Nat'l Trust Co. v. Wilk, 2013 ME 79, ¶¶ 1, 22, 76 A.3d 363. In Wilk, the Law Court vacated a judgment of foreclosure and remanded for entry of judgment in

3

defendant's favor. See id. ¶¶ 1, 22. The Law Court determined plaintiff did not prove at trial that plaintiff owned the mortgage. Id.

Faced with this history, this court favors a judgment's finality over validity. The Law Court has stated, "[t]he more recent trend in the law is to favor finality over an absolute requirement of validity." Standish Tel. Co. v. Saco River Tel. & Tel. Co., 555 A.2d 478, 481 (Me. 1989)(citation omitted). In Standish, the Law Court determined that although a subsequent case clarified and limited the authority of the Public Utilities Commission (PUC), the PUC's order from 1938 was not appealed and had the effect of a judgment. See id. The Law Court relied on the Restatement (Second) of Judgments (1982) to conclude the PUC's jurisdiction to enter the order, which was sought by the parties, was *res judicata*. See id. at 480-81. The favoring of "finality over an absolute requirement of validity," discussed in Standish, is especially important in judgments affecting real estate.

If a court has subject matter jurisdiction, an unappealed judgment is valid and becomes *res judicata*. In Ervey v. Northeastern Log Homes, the Workers' Compensation Board nullified a 1986 unappealed decree of the Workers' Compensation Commission. 638 A.2d 709, 709-11 (Me. 1994). The Board determined the decree was null and void because the Commission had no authority to require defendant to pay plaintiff benefits. Id. at 710. The Law Court reversed and stated:

> It is well established that a valid judgment entered by a court, if not appealed from, generally becomes *res judicata* and is not subject to later collateral attack. We have recognized a strong policy in favor of ending litigation and giving finality to court judgments. Balanced against a policy favoring finality, however, is a requirement that in order to become final, a judgment must be valid.
>
> . . . .

4

> The "validity" of a judgment depends upon whether a tribunal has subject matter jurisdiction and territorial jurisdiction and whether adequate notice has been afforded to a party.

Ervey, 638 A.2d at 710-11 (internal quotation marks and citations omitted). Citing the Restatement (Second) of Judgments, the Law Court determined "the subject matter of the action was [not] so plainly beyond the [Commission's] jurisdiction that its entertaining the action was a manifest abuse of authority." Id. at 711 (citing Restatement (Second) of Judgments § 12(1) (1982)). Accordingly, the Law Court determined the Commission's decree was valid and entitled to *res judicata* effect.[2] Id.

Conclusion

Although the plaintiff lacked standing to prove that it was entitled to judgment on its second complaint for foreclosure, the lack of standing does not provide a basis to vacate an unappealed judgment for the defendant, entered after trial in the Superior Court. This court's judgment is valid and entitled to *res judicata* effect.

The entry is

> Plaintiff's Motion to Vacate Judgment and Dismiss Complaint without Prejudice is DENIED.

Dated: July 23, 2015

Nancy Mills
Justice, Superior Court

---

[2] The Law Court noted also that there was no indication in the record defendant was prevented from appealing the 1986 decree. Instead, defendant waited seven years to attempt to invalidate the decree. See Ervey, 638 A.2d at 711-12.

5

JONATHAN FLAGG ESQ
FLAGG LAW PLLC
93 MIDDLE ST
PORTSMOUTH NH 03801


FRANK D'ALLESANDRO ESQ
PINE TREE LEGAL ASSISTANCE
PO BOX 547
PORTLAND ME 04112

STATE OF MAINE
CUMBERLAND, ss



STATE OF MAINE
Cumberland, ss, Clerk's Office

RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-12-192
*NM - Cum - 5/16/2013*

NATIONSTAR MORTGAGE, LLC,

Plaintiff

v.

TIMOTHY HALFACRE,

Defendant

ORDER ON PLAINTIFF'S
COMPLAINT FOR
FORCLOSURE

Jury-waived trial[1] was held on the plaintiff's complaint for foreclosure, filed on 3/30/12. The defendant was served with the complaint on 4/4/12. He filed an answer on 4/19/12. The requirement for foreclosure mediation was vacated by order dated 7/5/12 because paperwork was not provided to the court.

The plaintiff filed a motion for summary judgment on 7/30/12. The defendant filed opposition to the motion. On 11/15/12, the plaintiff's motion for summary judgment was denied because the plaintiff failed to establish the foundation necessary to allow consideration of the plaintiff's representative's testimony and referenced business records.

The court has considered the testimony and exhibits, as well as the entire file. The court also has listened to the recording of the entire trial. For the following reasons, judgment is entered in favor of the defendant on the plaintiff's complaint.

---

[1] The defendant did not file a statement of witnesses and exhibits. The court determined to allow the defendant to present testimony and exhibits but offered to continue the trial to avoid any prejudice to the plaintiff. The plaintiff preferred to proceed to trial.

1

HISTORY

The documents admitted in evidence purport to show the following. The defendant[2] purchased property located at 55 Huntress Avenue, Westbrook, Maine. (Pl.'s Ex. 1.) He signed a promissory note and mortgage;[3] the lender was Residential Mortgage Services, Inc. (Pl.'s Exs. 2-3.)[4] The note was transferred by Residential Mortgage to SunTrust and endorsed in blank by SunTrust. (Pl.'s Ex. 2.)

The mortgage was assigned by MERS, as nominee for Residential Mortgage, to SunTrust on 6/4/09 and by SunTrust to Nationstar on 5/24/11. (Pl.'s Exs. 5, 7.) The mortgage was also assigned by MERS, as nominee for Residential Mortgage, to Nationstar on 12/6/10.[5] (Def.'s Ex. D.) The assignment from SunTrust to Nationstar was executed by Nationstar as attorney-in-fact for SunTrust. The attorney-in-fact form is not notarized or witnessed. (Pl.'s Ex. 5.) The assignment from MERS to SunTrust is signed by Roxanne Lockett as Vice President of MERS. A corporate resolution from SunTrust effective 7/14/03 provides that Roxanne Lockett is an employee of SunTrust. (Def.'s Ex. I.) According to the default letter, the loan is serviced by Nationstar for the Federal National Mortgage Association. (Pl.'s Ex. 6.)

Early on, when the defendant fell one month behind in his payment, he and his wife contacted SunTrust. SunTrust referred them to its internal litigation department. The Halfacres worked with that department for only a short time because SunTrust then outsourced the loan to First American Loss Mitigation. The defendant and his wife testified, credibly, that First American advised them not to pay on their loan until a

---

[2] The defendant's wife, Jessica Halfacre, did not sign the note because she was not yet married to the defendant.

[3] The original note and mortgage were presented at trial for the court's inspection.

[4] The defendant admitted his signature appears on plaintiff's exhibits 2-4.

[5] The defendant offered a newspaper article as support for his argument that Bryan Bly and Crystal Moore, who signed the mortgage assignment from MERS to Nationstar, were "robo signers." (Def.'s Exs. D, H.) The article was objected to by the plaintiff and was not admitted.

2

modification was completed because being current on the loan could jeopardize a modification. The Halfacres followed this advice. They continued to attempt to communicate with SunTrust but were immediately referred to First American because there was no communication between SunTrust and First American. In 2009, the first foreclosure complaint was filed against the defendant.

SunTrust sent a letter to the defendant dated 6/2/10, in which SunTrust stated that the defendant was approved for a trial period plan under a Home Affordable Modification Program. (Def.'s Ex. E.) The defendant signed this document on 6/21/10.

The defendant signed a Home Affordable Modification agreement on 10/29/10.[6] (Pl.'s Ex. 4.) SunTrust is listed as the lender. The document is signed by R. L. Flowers from MERS acting as nominee for SunTrust. The notary states that R. L. Flowers is a Vice President of SunTrust.

The agreement provides that the defendant was in default under his loan documents and provided a new principal balance and interest provisions, including a rate of 4.250%. (Pl.'s Ex. 4, ¶¶ 1(A), 3(B)-(C).) The document provides that it supersedes other modifications or plans, is a binding agreement, and provides that the defendant will be in default if he does not comply with the terms of the modified loan documents. (Pl.'s Ex. 4, ¶¶ 3(D), 4(B)-(E).)

The defendant received a letter from Nationstar on December 21, 2010. (Def.'s Ex. J.) Nationstar requested payment of $13,000.00 immediately by 12/15/10 with late fees to be applied after that date. The Halfacres called Nationstar immediately because they had no previous knowledge of Nationstar.[7] They asked who Nationstar was and

---

[6] This modification was signed after an initial complaint for foreclosure was filed. A motion to dismiss was granted on 6/23/11. SunTrust Mortgage, Inc. v. Halfacre, CUMB-RE-2009-134 (Me. Super. Ct., Cumb. Cty. June 12, 2009).

[7] The defendant called Fannie Mae and was told that SunTrust still had the loan, not Nationstar.

3

how it received their loan. They stated they were still in a foreclosure action that had not been dismissed. The Halfacres requested proof from Nationstar regarding the loan in order to know whether to deal with Nationstar. The Halfacres requested the approved loan modification. They were told by Nationstar to disregard these communications from Nationstar because the notices were simply computer-generated and the Halfacres' modification was coming. The Halfacres received no further request for information from Nationstar.

By cover letter dated 2/26/11, the plaintiff sent a copy of the modification documents to the defendant. Page 5 is blank. (Compare Pl.'s Ex. 4, p. 5, with Def.'s Ex. B, p.5.) The signatures on the modification agreement at page 5 are dated 11/26/10.

By letter dated 5/16/11, Nationstar sent a letter to the defendant and stated that he was approved for the Alternative Modification Program, a program "designed for borrowers, like you, who have made all of their HAMP trial period payments but for some reason did not meet all the eligibility criteria for conversion to a permanent modification under HAMP." (Def.'s Ex. C.) The defendant paid the trial payments in June, July, and August of 2011. The defendant spoke to a representative of Nationstar at the end of August 2011, who stated that the defendant had complied with all requirements of the trial modification and the defendant would receive a new agreement within the next week. The new agreement would outline the new payment arrangement and the defendant would receive statements. As of the date of trial, the defendant had received no agreement. The defendant stopped payments because Nationstar did not provide a finalized agreement.

A right to cure dated 12/13/11 was sent to the defendant. (Pl.'s Ex. 6.) The defendant admitted in his answer that he received the letter. The right to cure letter did not give the defendant sufficient time to respond after receipt of the letter. (Pl.'s Ex. 6.)

4

The plaintiff offered a document dated 7/11/12, which outlines the defendant's payment history. (Pl.'s Ex. 11.) In response to the defendant's request, the plaintiff sent a corporate advance breakdown dated 1/20/11.[8] (Def.'s Ex. J.) According to these documents, despite missing payments and the accrual of interest, the defendant's principal balance in January 2011 exceeded that in July 2012.

CONCLUSIONS

The plaintiff has failed to prove by a preponderance of the evidence that it is entitled to judgment. The plaintiff has failed to establish the foundation necessary to accord any weight to the testimony of Hollis Brownlee, the plaintiff's representative, or the plaintiff's exhibits. See Beneficial Maine, Inc. v. Carter, 2011 ME 77, ¶¶ 15-16, 25 A.3d 96; HSBC Mortgage Services, Inc. v. Murphy, 2011 ME 59, ¶ 10, 19 A.3d 815; M.R. Evid. 803(6).

The court has listened to the tapes of the entire trial. Mr. Brownlee was given the Halfacre file one week prior to trial. It was not established that he has knowledge of the record keeping practices of Residential Mortgage Services, Inc., MERS, or SunTrust. In fact, in response to a question from the defendant about the extent of Mr. Brownlee's knowledge about this case, he testified that in his review, he backtracked to the point when Nationstar was given the loan from SunTrust. His testimony that he has personal knowledge about the facts and the documents was not supported by the record and was not credible, even with regard to Nationstar's records.

The defendant represented himself and posed few challenges to testimony or exhibits. The fact that exhibits are admitted or testimony is given does not, however, require the court to accord weight to that evidence. Further, the use of continuous and

---

[8] The cover letter, dated 12/9/10, provides: "This is in response to your request on 1/25/11 for a corporate advance breakdown on your account #596631278."

5

lengthy leading questions, to which Mr. Brownlee frequently answered simply "yes" or "correct," does not result in credible and reliable evidence on which the court will base a judgment. This method of interrogation was employed especially during the redirect examination of Mr. Brownlee by plaintiff's counsel. The foundation established for Mr. Brownlee to testify consisted, essentially, of having looked at and reviewed records, having been trained, having experience, being able to pull up documents on a computer, having documents transferred to Nationstar, and relying on records.

As one of many examples, on this record, Mr. Brownlee was not competent to testify, as he did during redirect examination by the plaintiff's attorney, that he did not question the trustworthiness of any documents he testified about and did not question the methods or circumstances of the way the documents were prepared. Similarly, Mr. Brownlee testified that he knows from his training, by looking at the document on his computer, and by looking at "a bunch" of other documents that the defendant's payment history was accurate. (Pl.'s Ex. 11.) Mr. Brownlee testified about the plaintiff's counsel's invoice to Nationstar for fees and costs, although Mr. Brownlee failed to establish any knowledge about the fees and costs or the preparation of the document. (Pl.'s Ex. 10.)

In addition to the lack of foundation required for consideration of the plaintiff's documents, the court is concerned about the validity of the assignment of the mortgage from SunTrust to Nationstar. (Pl.'s Ex. 5; see TEX. PROB. CODE ANN. § 482 (West 2013); 18-A M.R.S. § 5-905 (2012); see also Bank of America, N.A. v. Cloutier, 2013 ME 17, ¶ 21, 61 A.3d 1242 (statute requires that "a foreclosure plaintiff identify the owner or economic beneficiary and, if it is not itself the owner, prove that it has power to enforce the note.")) The court is further concerned about the notice of default provided to the

6

defendant, the assignment from MERS to SunTrust, and the assignment from MERS to Nationstar.

The Superior Court has equitable power in actions for foreclosure and broad discretion in exercising this power. 4 M.R.S. §§ 105(1) (2012); Farm Credit of Aroostook v. Sandstrom, 634 A.2d 961, 962 (Me. 1993) (referring to 4 M.R.S.A § 152(5)(F) (1989), now 4 M.R.S. 152(5)(E) (2012). One who seeks equity must do equity. See Hamm v Hamm, 584 A.2d 59, 61 (Me. 1990) ("it is an elementary principal of equity jurisprudence that 'whenever a party, who as actor seeks to set the judicial machinery in motion and obtain some remedy, *has violated conscience or good faith, or other equitable principle in his prior conduct*, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right or to award him any remedy.'") (emphasis in original). "Both the grant of equitable relief and the withholding of such relief are addressed to the sound discretion of the court." Great Hill Fill & Gravel, Inc. v. Shapleigh, 1997 ME 75, ¶ 7, 692 A.2d 928 ("A decree of specific performance can never be claimed as a matter of right.")

Although not dispositive, the court notes the policy considerations discussed recently by the Law Court. See Cloutier, 2013 ME 17, ¶¶ 19-20, 61 A.3d 1242. In this case, when SunTrust outsourced the loan, the Halfacres were referred to First American Loss Mitigation by SunTrust. They were told to deal exclusively with First American because there was no communication between SunTrust and First American. First American advised the Halfacres not to pay their mortgage payments because payment would jeopardize any modification. The first complaint for foreclosure followed. Later, when the defendant received a letter from Nationstar, in which Nationstar demanded payment and threatened late fees, a representative from Nationstar told the Halfacres to disregard such computer-generated letters because their modification was forthcoming.

7

None was received by the defendant. The second complaint for foreclosure followed. This record makes clear that the Halfacres did their best to cooperate with the various entities involved with the loan.

The entry is

> Judgment is entered in favor of the Defendant and against the Plaintiff on the Plaintiff's Complaint.

Date: May 10, 2013

Nancy Mills
Justice, Superior Court

8

```
NATIONSTAR MORTGAGE LLC VS TIMOTHY E HALFACRE
UTN:AOCSsr  -2012-0030716                        CASE #:PORSC-RE-2012-00102
-------------------------------------------------------------------------
01 0000003766            FLAGG, JONATHAN
     FLAGG LAW, PLLC 93 MIDDLE STREET PORTSMOUTH NH 03801
     F      NATIONSTAR MORTGAGE LLC                  PL      RTND  11/08/2012
```

Timothy Halfacre  - Pro Se Def.
55 Huntress Ave.
Westbrook Me 04092